**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HUNTER J. CHURCH, *individually and on behalf of those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>J RITTER LAW P.C. *et al.*,<br><br>Defendants. | Civil Action No. 23-1709 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Hunter J. Church's ("Plaintiff") Motion to Remand. (ECF No. 4.) FedChex Recovery, LLC ("Defendant") opposed (ECF No. 6), Plaintiff replied (ECF No. 7), and Defendant filed a sur-reply (ECF No. 10). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court denies Plaintiff's Motion to Remand.

**I.   BACKGROUND**

Plaintiff originally initiated this action in New Jersey Superior Court, Mercer County, asserting Defendants violated the Fair Debt Collection Practices Act ("FDCPA"). (*See generally* Compl., ECF No. 1-2.) Plaintiff brought this suit as a class action on behalf of all persons "to whom a letter was mailed which was dated on or after February 19, 2022." (*Id.* ¶ 72.)

In the fall of 2017, while Plaintiff was a student at Bergen County College, Plaintiff purchased two books from the college's bookstore. (*Id.* ¶ 41.) Years later, he received correspondence from Jonathan Ritter, Esq.'s law firm (the "Ritter Firm" or "Attorney Ritter")

dated February 22, 2022. (*Id.* ¶ 31.) The letterhead stated that the Ritter Firm was hired by Defendant to collect a debt owed to the Bergen Bookstore arising from Plaintiff's purchase of the two textbooks.[1] (Compl., Ex. A.) Specifically, the correspondence stated that Defendants sought to collect $466.77 from Plaintiff, consisting of two debts with a combined principal amount of $171.78 and another $299.99 in unexplained "fees." (*Id.* ¶ 35.) According to the correspondence, Plaintiff had thirty days to dispute the debt in writing. (*Id.* ¶ 47.) As he received the correspondence on or before February 28, 2022, the thirty-day window closed on March 30, 2022. (*Id.* ¶ 48.)

Plaintiff spent $7.38 to send a written dispute by mail on March 21, 2022. (*Id.* ¶¶ 55, 57.) The Ritter Firm received the dispute on March 23, 2022. (*Id.* ¶ 56.) Though he sent his dispute during the thirty-day window, Plaintiff received a follow-up correspondence on March 23, 2022 (mailed on March 21) alleging that he failed to respond to the previous notice. (*Id.* ¶¶ 58, 62.) The follow-up correspondence also appeared to be from Attorney Ritter but was "mailed without any meaningful attorney involvement." (*Id.* ¶¶ 61, 63.) Plaintiff did not receive a response regarding his written dispute letter but received an email correspondence a month later from the Ritter Firm stating, "[p]lease be advised that we have closed out your file with our office. Thank you." (*Id.* ¶¶ 66-67.)

Plaintiff alleges that the email correspondence he received "left him confused, anxious, and upset as to his rights, what his liability might be for the [d]ebt, and, if liable, what amount he might be legally obligated to pay." (*Id.* ¶ 70.) Thus, Plaintiff brings a myriad of allegations under the FDCPA such as: (1) Defendants harassed him by seeking to collect on the debt; (2) Defendants used false, deceptive, or misleading representations in the collection correspondence;

---

[1] The letter's signature block stated that "no attorney with this firm has personally reviewed the specific circumstances of your account." (*Id.* ¶¶ 33, 44.)

2

(3) Defendants falsely represented that the collection correspondence were from an attorney; and (4) Defendants inconsistently communicated with Plaintiff during the thirty-day validation period. (*Id.* ¶¶ 81-90.)

On February 23, 2023, Plaintiff filed suit in Superior Court. (Notice of Removal, Ex. A, ECF No. 1-2.) On March 27, 2023, Defendant filed a notice of removal from Superior Court. (Notice of Removal, ECF No. 1.) Plaintiff then filed the instant motion, and Defendant filed a response in opposition. (Pls.' Moving Br., ECF No. 4; Defs.' Opp. Br., ECF No. 5.) Plaintiff replied to Defendant's opposition arguing that Defendant failed to show that this Court has federal subject matter jurisdiction over Plaintiff's claims because Defendant failed to show Article III standing. (Pls.' Reply Br. 3-4, ECF No. 7.) Defendant filed a sur-reply arguing that this Court does have subject matter jurisdiction over Plaintiff's claims. (Defs.' Sur Reply 2-3, ECF No. 10.)

## II.     LEGAL STANDARD

Federal courts are courts of limited jurisdiction, meaning that for a federal court to hear a case, it must have jurisdiction over the issue, such as diversity or federal question jurisdiction. *In re Morrissey*, 717 F.2d 100, 102 (3d Cir. 1983). The federal removal statute, 28 U.S.C. § 1441, states that unless "otherwise expressly provided by . . . Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A plaintiff can move to remand a case removed to a federal court where the court lacks subject matter jurisdiction or removal was otherwise improper. *Id.* § 1447(c).

The Third Circuit has held that the removal statute "is to be strictly construed against removal" to honor Congressional intent. *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392,

396 (3d Cir. 2004); *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985) ("Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand."). Thus, a district court has the authority to remand a case that was removed to federal court if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction . . . ." 28 U.S.C. § 1447(c). To defeat a motion to remand, a defendant bears the burden of demonstrating the federal court's jurisdiction. *Abels*, 770 F.2d at 29 (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)).

### III. DISCUSSION

As Plaintiff's claims arise out of the FDCPA, his claims invoke federal question jurisdiction, which can confer this Court with subject matter jurisdiction. 28 U.S.C. § 1331. Subject matter jurisdiction, however, is not established solely because Plaintiff pled a federal cause of action. Instead, a defendant must also show that a plaintiff has Article III standing in federal court to establish that this Court has subject matter jurisdiction over a plaintiff's claims. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) ("Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims.") (internal quotation marks and citation omitted).

Plaintiff contends that Defendant failed to prove that this Court has subject matter jurisdiction over Plaintiff's claims because Defendant failed to establish Article III standing. (Pls.' Moving Br. 3.) Defendant claims Plaintiff satisfies the requirements for Article III standing. (*See generally* Defs.' Opp'n Br.) To establish standing under Article III, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,

4

and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).[2]

In moving for remand, Plaintiff argues only that Defendant "shoulders the burden of demonstrating that [Plaintiff's] complaint alleges an Article III injury-in-fact" and suggests that Defendant cannot show that Plaintiff suffered an injury-in-fact sufficient to confer this Court with subject-matter jurisdiction. (Pl.'s Mov. Br. 6.) To establish an "injury in fact," a plaintiff may show that he suffered a "concrete and particularized injury." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). This typically takes the form of tangible harm. For example, where a defendant "has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *Id.* at 2204. A statutory violation alone is insufficient to establish standing; the plaintiff must have suffered a concrete injury as a result of the violation. *Id.* at 2205. Specifically, the court in *TransUnion* reiterated that a court should determine "whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts – such as physical harm, monetary harm, or various intangible harms." *Id.* at 2200.

Here, Plaintiff alleges that he spent $7.38 to send his written dispute of the debt to the Ritter Firm because of the notice he received. (Compl. ¶¶ 55, 57.) Though $7.38 is a relatively insignificant monetary loss, federal courts, including courts in this Circuit, have held that any monetary harm is sufficient to satisfy the "injury-in-fact" requirement for purposes of Article III

---

[2] The Court recognizes Plaintiff's argument that Defendant failed to address jurisdiction for the unnamed class members. (Pl.'s Reply Br. 3.) As held repeatedly by the Third Circuit, however, Article III standing must only be proven for the named representative at this stage. *In re Horizon Healthcare Serv., Inc., Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017); *Neale v. Volvo Cars of N. Am., LLC*, 794 F. 3d 353, 362 (3d Cir. 2015).

standing[3]. *In re Lincoln Nat'l COI Litig.*, 620 F. Supp. 3d 230, 264 (E.D. Pa. 2022) ("[A]ny monetary loss, however small, confers standing." (citing *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 163 (3d Cir. 2017)); *see also Viernes v. DNF Assocs., LLC*, 582 F. Supp. 3d 738, 756 (D. Haw. 2022) (holding that a payment of $13.70 in postal fees is a concrete harm); *Magruder v. Cap. One, Nat'l Ass'n*, 540 F. Supp. 3d 1, 9 (D.D.C. 2021) (finding that the plaintiff incurred "out-of-pocket expenses" because of an FDCPA violation, thus suffering a concrete injury); *Van v. LLR, Inc.*, 962 F.3d 1160, 1162 (9th Cir. 2020) ("The district court erred by concluding that $3.76 is 'too little to support Article III standing.' 'For standing purposes, a loss of even a small amount of money is ordinarily an "injury."'"). Accordingly, Plaintiff's monetary harm constitutes an "injury in fact" sufficient for conferring Article III standing to the extent he seeks to argue that Ritter Law's original written debt-collection communication was deceptive and prompted him to respond with a written dispute that cost him $7.38 in postage fees.[4]  *See Madlinger*, No. 21-154, 2022 WL

---

[3] This Court has not yet addressed whether there is a minimum amount of monetary harm sufficient to serve as an "injury-in-fact" for purposes of assessing Article III standing under the FDCPA. The Third Circuit, however, has credited the assertion that "[a]ny monetary loss suffered by [a] plaintiff satisfies [the injury-in-fact] element; [e]ven a small financial loss. *Cottrell*, 874 F.3d at 163 (third and fourth alterations in original) (internal quotation marks and citation omitted). Accordingly, Plaintiff's $7.38 paid in postal fees while disputing a debt under the FDCPA is sufficient to establish an "injury-in-fact" for purposes of Article III standing under the FDCPA.

[4] The Court notes that it is unclear from Plaintiff's Complaint whether he intends to bring any individual claims dependent on his alleged general confusion stemming from Ritter Law's April 26, 2022 email correspondence. (*See* Compl. ¶¶ 67, 81-90 (listing at least twelve theories of violation under the FDCPA without clearly specifying whether those theories serve as separate, distinct claims).) Importantly, to the extent that Plaintiff intends to raise claims relying on his general confusion, such allegations cannot serve as the basis for establishing an "injury in fact." *See Pistone v. Client Srvs., Inc.*, No. 21-1285, 2023 WL 3434042, at *3 (D.N.J. May 12, 2023) ("[G]eneralized confusion is not sufficient to confer Article III standing."). Accordingly, to the extent that Plaintiff intends to bring any FDCPA claims dependent solely on general confusion he experienced after receiving Ritter Law's email correspondence, this Court does not have subject matter jurisdiction over such claims. *See In re Valsartan, Losartan, and Irbesartan Prods. Liab. Litig.*, MDL No. 2875, 2021 WL 100204, at *14 (D.N.J. Jan. 21, 2021) ("[A] plaintiff must demonstrate standing for each claim he seeks to press.")

2442430, *6 (D.N.J. July 5, 2022) (finding that if any confusion about a written communication results in reliance, i.e. disputing the debt in writing because a plaintiff is confused by an allegedly deceptive communication from a debt-collector, a plaintiff has Article III standing).

## IV.  CONCLUSION

For the reasons outlined above, the Court finds Defendant has proven Article III standing based on Plaintiff's alleged $7.38 loss in postage fees. As such, Plaintiff's Motion to Remand is denied. An appropriate order will follow.

/s/ Michael A. Shipp

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**