**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HUNTER J. CHURCH, *individually and on behalf of those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>J RITTER LAW P.C., *et al.*,<br><br>Defendants. | Civil Action No. 23-1709 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendant FedChex Recovery LLC's ("FedChex") Motion for Judgment on the Pleadings. (ECF No. 19.) Plaintiff Hunter J. Church ("Plaintiff") opposed (ECF No. 26), and FedChex replied (ECF No. 30). The Court has considered the parties' arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, FedChex's Motion for Judgment on the Pleadings is denied.

**I.     BACKGROUND**[1]

**A.     Statement of Facts**

Plaintiff, a New Jersey resident, brings this action under the Fair Debt Collection Practices Act ("FDCPA") against J. Ritter Law, PC (the "Ritter Firm"), Jonathan Ritter, Esq. ("Attorney Ritter"), and FedChex (collectively "Defendants"). (*See generally* Compl., ECF No. 1-2.) The

---

[1] The Court previously analyzed the facts giving rise to this matter when it addressed Plaintiff's Motion to Remand. (*See* Mem. Op., ECF No. 11.) The facts, therefore, are well known to the parties, and thus the Court will only present facts that are relevant to decide the instant motion.

Ritter Firm is a New York-based law firm "dedicated to the collection of outstanding receivables and defaulted accounts." (*Id.* ¶¶ 3, 24.) Attorney Ritter practices law through the Ritter Firm. (*Id.* ¶ 6.) FedChex is a California limited liability corporation that "regularly collects debts for others and, in connection with its collection of such debts, hires attorneys or law firms, such as the Ritter Firm." (*Id.* ¶¶ 4, 26; *see also* FedChex Answer ¶ 26, ECF No. 5.)

In the fall of 2017, Plaintiff, then a student at Bergen County College, obtained two textbooks from the college's bookstore (the "Bookstore"). (Compl. ¶ 41.) Years later, on February 22, 2022, the Ritter Firm sent Plaintiff a letter (the "Initial Letter"). (*Id.* ¶ 31.) The Initial Letter stated that FedChex hired the Ritter Firm "to collect a debt owed to [the Bookstore]." (*See* Compl., Ex. A.) The Initial Letter further stated that Defendants sought to collect $466.77 from Plaintiff. (Compl. ¶ 35.) This amount came from two debts with a combined principal amount of $171.78 and another $294.99 in "unexplained 'fees.'"[2] (*Id.* ¶ 35.) The Initial Letter gave Plaintiff thirty days, ending on March 30, 2022, to dispute the debt in writing. (*Id.* ¶¶ 47-48.)

Plaintiff mailed the Ritter Firm a written dispute on March 21, 2022. (*Id.* ¶¶ 54, 56.) Before receiving Plaintiff's written dispute, however, and within the thirty-day window Plaintiff had to respond, the Ritter Firm sent Plaintiff another letter (the "Follow-Up Letter"). (*Id.* ¶ 58.) This Follow-Up Letter, which appeared to be from Attorney Ritter,[3] stated that Plaintiff failed to respond to the Initial Letter. (*Id.* ¶¶ 61-63; *see also* Compl., Ex. B, ECF No. 1-2.)

---

[2] Although the Complaint alleges that the debts included $299.99 in fees (Compl. ¶ 35), a closer reading of the validation notices attached to the Complaint reveals that the fees only amounted to $294.99 (Compl., Ex. A, ECF No. 1-2).

[3] Despite the Follow-Up Letter appearing to have been sent by Attorney Ritter, the letter stated that it was "mailed without any meaningful attorney involvement." (*Id.* ¶¶ 61-63; *see also* Compl., Ex. B, ECF No. 1-2.)

Sometime after the Follow-Up Letter was sent, the Ritter Firm received Plaintiff's written dispute. (*Id.* ¶¶ 66-67.) The Ritter Firm, however, never responded to Plaintiff's written dispute; instead, one month later, the Ritter Firm emailed Plaintiff stating it had "closed out [Plaintiff's] file with [its] office." (*Id.*) Plaintiff claims that this correspondence from the Ritter Firm "left him confused, anxious, and upset as to his rights, what his liability might be for the [d]ebt, and, if liable, what amount he might be legally obligated to pay." (*Id.* ¶ 70.)

### B.   Procedural History

Plaintiff commenced this suit on February 21, 2023[4] in New Jersey Superior Court as a class action on behalf of all persons "to whom a letter was mailed which was dated on or after February 19, 2022." (Compl. ¶ 72; Civil Case Information Statement, ECF No. 1-2.) Plaintiff alleges that Defendants violated numerous provisions of the FDCPA by: (1) harassing Plaintiff; (2) using false, deceptive, or misleading representations in the Initial Letter and Follow-Up Letter; (3) falsely representing that the Initial Letter and Follow-Up Letter came from an attorney; and (4) inconsistently communicating with Plaintiff during the thirty-day validation period. (*Id.* ¶¶ 81-90.)

On March 27, 2023, FedChex removed the case from Superior Court. (*See* Notice of Removal, ECF No. 1.) Plaintiff then moved to remand back to state court (*see* Mot. Remand, ECF No. 4), which this Court denied (*see* Mem. Op, ECF No. 12). On August 11, 2023, FedChex filed the instant Motion for Judgment on the Pleadings. (*See* FedChex's Mot. J. Pleadings, ECF No. 19; FedChex's Moving Br., ECF No. 20.) Plaintiff opposed (*see* Pl.'s Opp'n Br., ECF No. 26), and FedChex replied (*see* FedChex's Reply Br., ECF No. 30).

---

[4] The Court acknowledges that its previous opinion stated that Plaintiff filed the Complaint on February 23, 2023. (Mem. Op. 3, ECF No. 11.) The Court clarifies that Plaintiff filed the Complaint on February 21, 2023. (*See* Civil Case Information Statement.)

## II.   <u>LEGAL STANDARD</u>

A defendant may move to dismiss a complaint for failure to state a claim before or after filing an answer. *See Hackensack Riverkeeper, Inc. v. Del. Ostego Corp.*, 450 F. Supp. 2d 467, 484 (D.N.J. 2006) (citing Fed. R. Civ. P. 12(b)(6), (c)). When moving to dismiss after filing an answer, a defendant must move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[5] *Id.*; *see also* Fed. R. Civ. P. 12(c), (h)(2). In analyzing a motion for judgment on the pleadings, the court uses the same legal standard "that appl[ies] to a Rule 12(b)(6) motion." *See Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)).

In considering a Rule 12(c) motion, the court must "accept all of the allegations in the pleadings of the [non-moving] party . . . as true and draw all reasonable inferences in [its] favor . . . ." *Id.* at 417-18 (citing *Allah v. Al-Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000)). The Court, however, does not need to "credit either 'bald assertions' or 'legal conclusions' in a complaint . . . ." *Arrowhead Health & Racquet Club, LLC v. Twin City Fire Ins. Co.*, No. 20-8968, 2021 WL 2525739, at *2 (D.N.J. June 21, 2021) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). In ruling on a motion for judgment on the pleadings, "a court may examine the complaint, the answer, 'any matter of which the court can take judicial notice for the factual background of the case,' and 'written instrument[s] that [are] exhibit[s] to a pleading,' so long as those exhibits are 'indisputably authentic documents.'" *Perrigo Co. v. AbbVie Inc.*, No. 21-3026, 2022 WL 2870152, at *2 n.6 (3d Cir. July 21, 2022) (first quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011); then quoting Fed. R. Civ. P. 10(c); and then quoting *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004)). The Court may grant a Rule 12(c)

---

[5] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

motion only "if the movant establishes that 'there are no material issues of fact, and he is entitled to judgment as a matter of law.'" *Zimmerman*, 873 F.3d at 417 (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (citation omitted)).

## III.   **DISCUSSION**

FedChex makes four arguments in support of granting judgment on the pleadings: (1) the Complaint is barred by the FDCPA's statute of limitations; (2) Plaintiff fails to plead the existence of a debt; (3) Plaintiff fails to plead that FedChex is vicariously liable for the Ritter Firm's conduct; and (4) the Complaint is a "shotgun pleading" that the Court should dismiss. (*See generally* FedChex's Moving Br.) The Court considers each argument in turn.

### A.   **Statute of Limitations**

As a threshold matter, FedChex argues that the Complaint is time-barred by the FDCPA's statute of limitations. (*Id.* at 8-15.) The FDCPA has a one-year statute of limitations, which begins to run "from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Both parties agree that the statute of limitations began running on February 23, 2022, the day after the Ritter Firm sent Plaintiff the Initial Letter. (*See* FedChex's Moving Br. 10; Pl.'s Opp'n 18.) The parties also agree that Plaintiff needed to file his Complaint by February 23, 2023. (*Id.*) FedChex, however, claims that Plaintiff's Complaint is untimely because "Plaintiff did not file suit until February 27, 202[3]."[6] (FedChex's Moving Br. 13.) Not so. Plaintiff filed the Complaint on February 21, 2023, which is timely. (*See* Civil Case Information Statement.)

---

[6] FedChex states that "Plaintiff did not file suit until February 27, *2022*." (FedChex's Moving Br. 13 (emphasis added).) Plaintiff suggests that the date is likely a typographical error. (Pl.'s Opp'n 18.) Because FedChex argues that the limitations period began on February 23, 2022, the Court agrees and assumes that FedChex meant to argue that "Plaintiff did not file suit until February 27, *2023*."

**B.     Failure to Plead the Existence of a Debt**

Second, FedChex argues that judgment on the pleadings is warranted because Plaintiff has failed to plead the existence of a debt, as defined under the FDCPA. (FedChex's Moving Br. 15-19.) Indeed, to prevail on an FDCPA claim, a plaintiff must prove that: "(1) she is a consumer[;] (2) the defendant is a debt collector[;] (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it; and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."[7] *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014) (quoting *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005)).

*i.     Determining a Debt Under the FDCPA*

The FDCPA defines debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes." 15 U.S.C. § 1692a(5). The Third Circuit conducts a three-part test to determine what constitutes a "debt" under the FDCPA. *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 360 (3d Cir. 2018). First, the court considers whether the underlying obligation "arises out of a transaction." *Id.* (quoting 15 U.S.C. § 1692a(5)). A transaction is "a consensual exchange involving an affirmative 'request' and 'the rendition of a service or purchase of property or other item of value.'" *Id.* at 360 (quoting *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 400 (3d Cir. 2000) (abrogated on other grounds)); *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980)). Second, if the

---

[7] Congress passed the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. Accordingly, the FDCPA creates a private right of action against any "debt collector" who violates any provision of the FDCPA. *See* 15 U.S.C. § 1692k; *Levine v. Fin. Freedom*, No. 18-4127, 2018 WL 6492872, at *3 (D.N.J. Dec. 10, 2018).

obligation arises out of a transaction, the court identifies what is being exchanged in the transaction. *St. Pierre*, 898 F.3d at 361. Third, the court looks at "the characteristics of" the things being exchanged in the transaction to determine if "they are 'primarily for personal, family, or household purposes.'" *Id.* (quoting 15 U.S.C.§ 1692a(5)). *See also Staub*, 626 F.2d at 278 (noting that the FDCPA "was intended to apply 'only to debts contracted by consumers for personal, family or household purposes'; even the collection of commercial accounts is beyond its coverage.") (citation omitted).

> ii.     *Whether Plaintiff has Adequately Pleaded a Debt*

With the foregoing in mind, the Court finds that Plaintiff's allegations regarding the debt are well-pleaded. Plaintiff alleges that: (1) he was a student at Bergen County College; (2) as a student, he bought[8] two textbooks from the Bookstore; (3) he bought those books for his education;

---

[8] FedChex argues that "Plaintiff's allegations do not even confirm that he purchased the alleged books in question. Plaintiff only alleges that he *obtained* the same." (FedChex's Reply Br. 5 n.2.) Accordingly, "Plaintiff's allegations could be read as Plaintiff borrowed/rented the books in question from Bergen County Bookstore, and was assessed a fee for failure to timely return the same." (*Id.*) The Court, however, declines to reinterpret the facts in the Complaint in a light least favorable to Plaintiff. *See Corbett*, 873 F.3d at 417-18 (citations omitted) (noting that, on a 12(c) motion, courts must "accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and *draw all reasonable inferences in favor of the non-moving party*.") (emphasis added).

and (4) Defendants sought to collect a debt alleged to be owed to the Bookstore.[9] (Compl. ¶¶ 34,

41.) The Court finds these facts make it "plausibly inferable . . . that a consumer debt within the

ambit of the FDCPA is in dispute." *Ali v. Portfolio Recovery Assocs., LLC*, No. 13-4531, 2014 WL

4352316, at *2 (D.N.J. Sept. 2, 2014) ("[Plaintiff] alleges that the disputed debt at issue is,

according to [d]efendants' representatives, a $1068.12 unpaid balance at [a store] . . . . [The court

is] therefore satisfied that [the p]laintiff has alleged facts from which one can infer that an alleged

consumer debt covered by 15 U.S.C. § 1692a(5) is at issue here."). *Compare Powell v. Aldous &*

*Assocs., P.L.L.C.*, No. 17-3770, 2018 WL 278736, at *4 (D.N.J. Jan. 3, 2018) ("The complaint

pleads factually that [the plaintiff] entered into an agreement with [the defendant] for his personal

use of wireless service; that this created a financial obligation; that he used the wireless service

exclusively for his personal purposes; that conversely he did not use the wireless service for any

business purposes; and that the transaction created debt.") *with Vaquero v. Frederick J. Hanna &*

*Assocs., P.C.*, No. 13-641, 2013 WL 5947011, at *2 (D.N.J. Nov. 6, 2013) (dismissing a FDCPA

action where the "[p]laintiff's sole allegation to plead the existence of a debt . . . is that '[the

---

[9] The Court is unconvinced by FedChex's argument that Plaintiff's allegations fall short of establishing a debt because they rest solely upon "information and belief." In the Third Circuit, pleading upon information and belief "is permissible '[w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control'—so long as there are no 'boilerplate and conclusory allegations' and '[p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'" *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)). Here, the Court finds that the allegations as set forth—should "the phrase 'upon information and belief'" be "stripped altogether from the Complaint"—present plausible facts that if proven true, could establish a cause of action. *See Smarte Carte, Inc. v. Innovative Vending Sols. LLC*, No. 19-8681, 2020 WL 5758363, at *6 n.7 (D.N.J. Sept. 28, 2020) (quoting *S'holder Representative Servs. LLC v. Medidata Sols., Inc.*, No. 19-1312, 2020 WL 972618, at *2 n.3 (D. Del. 2020)); *Cardinale v. Diversified Adjustment Serv., Inc.*, No. 17-564, 2017 WL 2901332, at *3 (D.N.J. July 6, 2017) (holding that the words information and belief do not by themselves "transform the statements in the [c]omplaint, which the Court must accept as true at this point in the litigation, into mere allegations that the Court should disregard.").

d]efendant sought to collect from [the plaintiff] a debt . . . arising from transactions incurred for personal, family, or household purposes.'"). As such, the Court finds that Plaintiff has plausibly pled the existence of a debt within the FDCPA.

### C.     Failure to Plead Vicarious Liability for FedChex

Third, FedChex argues that Plaintiff has failed to plead that it is vicariously liable for the Ritter Firm's conduct, because: (1) Plaintiff failed to plead that FedChex is a debt collector; and (2) Plaintiff failed to plead that FedChex exercised control over the Ritter Firm. (*See* FedChex's Moving Br. 20-23.)

#### i.     *Vicarious Liability under the FDCPA*

Under the FDCPA, "an entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf." *Pollice*, 225 F.3d at 404 (quoting *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994)). "[T]his is a fair result because an entity that is itself a 'debt collector' . . . should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf." *Id.* at 405. Traditional agency principles govern vicarious liability under the FDCPA. *See Barbato v. Greystone All., LLC*, 916 F.3d 260, 269 (3d Cir. 2019) (citing *Pollice*, 225 F.3d at 404-05). Traditional agency principles require that: (1) the principal must "[actually] control, or [have] 'the right to direct or control' [the agent]"; and (2) "the parties [must] consent to [the agent] acting on behalf of the [principal]." *Marucci v. Cawley & Bergmann, LLP*, 66 F. Supp. 3d 559, 564 (D.N.J. 2014) (quoting *Meyer v. Holley*, 537 U.S. 280, 285 (2003)). With these principles in mind, the Court turns to Defendant's arguments.

      *ii.     Failure to Plead that FedChex is a Debt Collector*

First, FedChex argues that Plaintiff has failed to plead that it is a debt collector. (FedChex's Moving Br. 20-21.) Specifically, FedChex argues that "Plaintiff simply parrots the definition of 'debt collector' in order to establish that FedChex is a debt collector under the statute," and thus, the Court should disregard this allegation. (FedChex's Moving Br. 20.)

Under the FDCPA, a debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.§ 1692a(6). To be sure, Plaintiff alleges in the Complaint that "FedChex regularly collects debts for others, and . . . hires attorneys or law firms, such as the Ritter Firm" to do so. (*See* Compl. ¶ 26.) Notably, FedChex, in its answer, "admits that it regularly collects debt for others, and in connection with its collection of such debts, hires attorneys or law firms, such as Ritter Firms to collect those debts." (FedChex's Answer ¶ 26, ECF No. 5.) FedChex, in other words, agrees with Plaintiff that it qualifies as a debt collector under the FDCPA. Accordingly, the Court rejects FedChex's contention that the pleadings fail to adequately plead FedChex is a debt collector.

      *iii.     Failure to Plead that FedChex Exercised Control Over the Ritter Firm*

Next, FedChex argues that Plaintiff has not adequately pled that it exercised control over the Ritter Firm. (FedChex's Moving Br. 21-22.) FedChex points to two allegations in the Complaint about its exercise of control over the Ritter Firm, which FedChex argues are unsubstantiated, threadbare, and conclusory:

> 39. Upon information and belief, FedChex controlled the nature of the Ritter Firm's collection activities and controlled the timing and nature of the communications with Church such that FedChex is not only directly liable for its conduct as a debt collector in relation to

> the subject debt but is also vicariously liable for the violations of
> law engaged in by the Ritter Firm.
>
>     . . . .
>
> 69. On information and belief, the Ritter Firm, under the supervision
> and direction of Attorney Ritter and FedChex, mails numerous
> letters using the same letter templates as were used to send the Initial
> Letter and the Follow-up Letter to others who are alleged to owe
> debts to a college or university book store.

(*Id.* at 22 (quoting Compl. ¶¶ 39, 69).) FedChex argues that Plaintiff has not pleaded enough facts

in these two allegations to hold it vicariously liable for the Ritter Firm's conduct.[10]

To plead vicarious liability against one defendant for the acts of another under the FDCPA,

a plaintiff must adequately allege that: (1) the principal "[actually] control[led], or [had] 'the right

to direct or control' [the agent]"; and (2) "the parties consent[ed] to one's acting on behalf of the

other." *Marucci*, 66 F. Supp. 3d at 564 (quoting *Meyer*, 537 U.S. at 285). FDCPA plaintiffs,

however, do not have to take the extra step of pleading additional "specific acts of control" one

defendant exerted over the other. *See id.* at 564 (declining "to impose an additional requirement

that, to state a claim of vicarious liability under the FDCPA, [plaintiffs] must allege specific acts

of control by the [debt collector defendant] over [a law firm defendant]."); *Barbato*, 916 F.3d at

269 ("[T]o the extent [defendant] argues that the District Court was obligated to find that

[defendant] exerted actual control over [its agent] in order to be held vicariously liable [under the

FDCPA], [defendant] misunderstands the tenets of agency law and our precedent."). Nor is this a

---

[10] FedChex cites two cases supporting the proposition that Plaintiff must plead specific acts of control to establish FDCPA liability. (FedChex's Moving Br. 22 (quoting *Shaw v. Hay, Hayt & Landau, LLC*, No. 20-115, 2021 WL 531961, at *6 (W.D. Pa. Feb. 12, 2021); and then citing *Muhammad v. Reese Law Grp., APC*, No. 16-2513, 2017 WL 1520144, at *4 (S.D. Cal. Apr. 27, 2017)).). The Court finds both cases distinguishable. In *Shaw*, the plaintiff sued both a law firm and the firm's individual employees for violating the FDCPA. *See Shaw*, 2021 WL 531961, at *3. In contrast to *Shaw*, *Muhammad* never reached the question of whether a plaintiff must show that one debt collector defendant exercised control over another; rather, it observed that one debt collector can be vicariously liable for the acts of another debt collector. *See Muhammad*, 2017 WL 1520144, at *4-5.

case where Plaintiff has not alleged *any* relationship between Defendant and the Ritter Firm. *See, e.g.*, *Arroyo v. Stoneleigh Recovery Assocs., LLC*, No 18-12161, 2019 WL 13256646, at *7 (D.N.J. Aug. 14, 2019) ("[A]bsent from the [c]omplaint, however, are factual allegations that address the relationship between [the defendants].").

Instead, Plaintiff alleges that FedChex is a debt collector and hired the Ritter Firm to collect a debt, which FedChex admitted. (FedChex's Answer ¶ 26.) The Court, therefore, finds it plausible that FedChex had the right to direct the Ritter Firm, and both parties agreed that the Ritter Firm would act on FedChex's behalf. *See Pollice*, 225 F.3d at 404-05 ("[V]icarious liability under the FDCPA will be imposed for an attorney's violations of the FDCPA if both the attorney and the client are debt collectors as defined in § 1692a(6)."). Accordingly, FedChex has failed to demonstrate that Plaintiff inadequately pled vicarious liability for the Ritter Firm's conduct.

### D.   Shotgun Pleading

Finally, FedChex argues that the Court should dismiss Plaintiff's Complaint because it is an impermissible "shotgun pleading."[11] (FedChex's Moving Br. 23-25.) Specifically, FedChex argues that the complaint is a shotgun pleading because it "does not separate 'into a different count each cause of action or claim for relief.'" (*Id.* at 24 (citing *Weiland*, 792 F.3d at 1321-23).)[12] Indeed,

---

[11] Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp v. Twombly*, 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Complaints that violate Rule 8 are often referred to as "shotgun pleadings." *Cambridge Mut. Fire Ins. Co. v. Stihl Inc.*, No. 22-5893, 2023 WL 5928319, at *2 (D.N.J. Sept. 12, 2023).

[12] FedChex cites several Alabama and Florida cases where the district court dismissed the plaintiff's complaint as a shotgun pleading because it grouped multiple FDCPA violations under one cause of action. (FedChex's Moving Br. 24-25 (citations omitted).) Out-of-circuit district court decisions, however, do not bind this Court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). Moreover, FedChex has cited no cases within the Third Circuit that dismissed an FDCPA complaint for grouping multiple violations under one cause of action. Accordingly, the Florida and Alabama cases FedChex cite have no bearing on this Court's opinion.

the Complaint states only one cause of action for a violation of the FDCPA and lists twelve provisions of the Act that the Defendants allegedly violated. (*See* Compl. ¶¶ 15, 89.01-89.12.)

The Court disagrees with FedChex's assertion that Plaintiff cannot allege multiple FDCPA violations under one cause of action. To state a claim under FDCPA, Plaintiff must adequately allege that FedChex "has violated *a* provision of the [the Act] in attempting to collect the debt," *Douglass*, 765 F.3d at 303 (quoting *Piper*, 396 F.3d at 232) (emphasis added). Of course, "one set of circumstances" can give rise to "numerous violations of the FDCPA." *Ford v. Consigned Debts & Collections, Inc.*, No. 09-3102, 2010 WL 5392643, at *5 (D.N.J. Dec. 21, 2010) (quoting *Clark v. Cap. Credit & Collection Servs.*, 460 F.3d 1162, 1178 (9th Cir. 2006)). *See also Clark*, 460 F.3d at 1177 ("Although we have never squarely addressed the issue of overlapping liability under the FDCPA, our prior cases leave us convinced that one action can give rise to multiple violations of the Act. . . . In so holding, we noted specifically that 'it is not unusual for an action to violate more than one FDCPA provision.'") (citations omitted); *Cohen v. Am. Credit Bureau, Inc.*, No. 10-5112, 2012 WL 847429, at *10 (D.N.J. Mar. 13, 2012) (stating that Congress designed the FDCPA to "account for a debt collector's multiple violations in collecting a single debt."); 53 Fed. Reg. 50,097, 50,101 (Dec. 13, 1988) (noting that "[i]n many cases[,] several different sections or subsections of the FDCPA may apply to a given factual situation."). Plaintiff, in other words, seeks relief based on one set of facts surrounding FedChex's attempt to collect a debt. Under these facts, FedChex's conduct allegedly violated the FDCPA in multiple ways. The Court, therefore, is unconvinced that Plaintiff must state each individual FDCPA violation in its own separate cause of action.

Ultimately, Plaintiff states one cause of action and pleads facts which, if true, plausibly entitle Plaintiff to relief. This is enough to put Defendants on notice of Plaintiff's claims against

them. The Court, therefore, cannot say that the Complaint is so defective that it falls short of Rule 8(a)(2)'s low bar for pleadings. Accordingly, the Court will not dismiss Plaintiff's Complaint as a shotgun pleading.[13]

## IV.   <u>CONCLUSION</u>

For all the reasons stated above, the Court denies FedChex's Motion for Judgment on the Pleadings. An appropriate order will follow.

<u>MICHAEL A. SHIPP</u>
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[13] FedChex raised a number of new arguments in its Reply Brief that it did not include in its Moving Brief. (*Compare* FedChex's Moving Br. 23-25 *with* FedChex's Reply Br. 3-5.) Specifically, FedChex asserts, in its Reply Brief, that Plaintiff's "[c]laims under § 1692f may not proceed," "Plaintiff's duplicative [§ 1692e] claims are subject to dismissal," and "Plaintiff has failed to allege how [§ 1692d] has been violated." (FedChex's Reply Br. 3-4.) "A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." *Ballas v. Tedesco*, 41 F. Supp. 2d 531, 533 n.2 (D.N.J. 1999) (citations omitted).